JOSEPH COHEN, plaintiff in error, *v.* THE PEOPLE, defendants in error.

To convict of having feloniously received goods which had been stolen from an incorporated company, it is necessary to allege in the indictment, and to prove on the trial, that the company alleged to have been injured by the offense of the defendant was an existing corporation.

THE prisoner was indicted for feloniously receiving stolen goods.   The indictment was as follows:

*City and county of New York, ss:*

The jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath present:

That Joseph Cohen, late of the first ward of the city of New York, in the county of New York aforesaid, on the sixth day of May, in the year of our Lord one thousand eight hundred and sixty-one, with force and arms, at the ward, city and county aforesaid, twelve hundred spools of cotton thread, of the value of five cents each spool, of the goods, chattels and personal property of Grover & Baker's Sewing Machine Company, a *corporation created by and existing under the laws of the State of Massachusetts,* by Frank J. Thornton and certain other persons to the jurors aforesaid unknown, then lately before feloniously stolen of the said Grover & Baker's Sewing Machine Company, unlawfully, unjustly, and for the sake of wicked gain, did feloniously receive and have (the said Joseph Cohen then and there well knowing the said goods, chattels and personal property to have been feloniously stolen), against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

NELSON J. WATERBURY, *District Attorney.*

A plea of "not guilty" was interposed, and the indictment came on to be tried in said court, before JOHN T. HOFFMAN, recorder, and a jury, in the County General Sessions, held in the city of New York, in June, 1861.

The district attorney, to sustain the said indictment, called

*James P. Denny,* who, being sworn, testified as follows: I was in the employ of the Grover & Baker Sewing Machine Company, of No. 495 Broadway; I had general charge of the business; Frank J. Thornton was the shipping clerk; his business was to take charge of the shipping of machines and silk and cotton thread; previous to the 8th of May, property to the amount of $1,200 was taken; I made inquiries at the store; in consequence of what I heard, I set Mr. Shaughnessey to watch Thornton; after we found he was taking goods, officer Wilson and another were set to watch him at the front and back doors of the store; Wilson shortly after reported to me, and the next day he arrested Thornton; in consequence of something I heard from Thornton or the detective, I had Cohen arrested; the silk taken from us was marked "Grover & Baker," by label put on by the manufacturers; the cotton taken was manufactured by Orr & Nott, Glasgow, and sold in this city by Knox, in Pine street; it was principally used for sewing machines, and worth forty-five cents a dozen spools; I cannot say that the box of cotton, said to have been taken from the prisoner by officer Wilson, was ours; it was precisely like it; the company is located at Boston, Massachusetts.

On being *cross-examined,* the witness said: It had the same manufacturer's mark as ours, but others sell that cotton as well as we.

*Nicholas Shaughnessey* was next sworn, and testified as follows: I was in the employ of the Grover & Baker Sewing Machine Company, in May last; so was Frank Thornton; his usual time to come was about half-past seven; I have seen him come about seven and go away again, and return about eight; I was directed to watch him, and did; Monday morning, about twenty minutes to seven, I saw him take a box of silk, in the absence of the porter from that part of the store,

and put it in his pocket, or inside his vest, and go with it through the back door out of the store; on the next day I saw him take another box of silk, and on the day following he took a box of cotton; he said he was going to ship it to Ohio; he was soon afterwards arrested; I had before seen him take packages; the box he took on Wednesday had no shipping mark on, nor had the others he took, that I know of; on Tuesday morning I did not follow him; on Wednesday morning I saw him go into the Mercer House, and lost sight of him; he always said he was going to ship them; I cannot say if he shipped them or not.

*Frank J. Thornton* was then placed on the stand and sworn. He testified as follows: I was in the employ of the Grover & Baker Sewing Machine Company, in May last, and had been so for about one year; I first saw Joseph Cohen, the prisoner, at the Melodeon, in Broadway; he was keeping a small stand there; he afterwards came to me and asked me if I wanted to make $500; I asked him how; he told me to call at his house the following morning; I did call at 83 White street; he said that Grover & Baker had a large quantity of silk and cotton, and if I would bring him cotton and silk, I could have money at command at any time; he told me he had been in the habit of buying the Grover & Baker silk and cotton for some time, at low prices; he showed me Grover & Baker's silk, Wheeler & Wilson's silk, and Mr. Singer's silk; he told me that I need not be afraid to bring things there; on the following morning I took some sewing silk and carried to his house; I took the labels off; it was in a small box; I destroyed the box and tore the labels off; I hesitated to carry it in the street with the name on; it did not suit him in that state; he said he could buy all he wanted elsewhere, and if I did not bring it with the labels on, he did not want it; he went to Turner's silk house and bought a bill of silk, but not in his own name; during the time I was there, I met five persons; two of them were victims, like myself; three of them, he told me, I need not be afraid of, as they were as large receivers as he was; one he warned me against, as he might interfere with

the business; I took boxes of cotton and bundles of silk, all
from the Grover & Baker Sewing Machine Company; I can't
tell how much; I went to Cohen's house two or three times a
week; the price paid for cotton was $12 per box of 100
dozen; for silk he gave me $3 per box; I generally took them
there about seven or eight o'clock in the morning.

*Cross-examined:* Have lived in New York nine years; came
from Rhode Island; I have been a collector, a grocery store
keeper, and also a dry and fancy goods dealer in Broadway;
I am married, and have been for the past eighteen months; I
am indicted for the stealing of these goods; my salary was
$10 per week; I don't know the effect of being made a wit-
ness; I know that, in certain cases, prisoners being used as
witnesses are discharged; a clerk in the district attorney's
office told me that I would go to the State prison whether I
was a witness or not; I asked the keepers of the prison what
they thought, but could get no satisfactory information; I
made a full written confession, and gave it to my wife to give
to Mr. Garvin, the district attorney; I recollect taking a box,
which I said I was going to ship to Ohio; that was the morn·
ing I was arrested; I was arrested by Wilson; I knew him,
and told him the whole story.

*William Wilson* was next sworn for the People, and said:
I am an officer; I was employed to watch Thornton, and did
so; on the seventh of May I followed him to No. 86 White
street; it was about seven o'clock A. M.; he seemed to have
something heavy in his coat pocket when he went in; when
he came out it appeared to be much lighter; on the morning
of the eighth day of May, I saw him come out of his place of
business with a box under his arm, go into the Mercer Street
House and come out again, when I arrested him; on the after-
noon of the same day I arrested Cohen, the prisoner, in Broad-
way, with a box of spool cotton under his arm; he said there
were twelve dozen in the box; I saw him come out of his
house with it; I afterward took him to the station house, and
then searched his house, but found nothing.

On the part of the defense,

*Henry Turner* was called, and testified as follows: I am a silk manufacturer and seller in this city; I sell a large quantity of silk to the Grover & Baker Company, and I also sell to others; I have sold silk to the prisoner; about $100 worth, perhaps; the three bills shown are from my store; one of them is in my handwriting, and the others my clerks'; I remember selling him silk; can't say when was the last time; whether it was April or May last, or not; it is worth $7 per pound; that is the price I sell to Grover & Baker for, and I sold to the prisoner for the same.

Previous to going into the defense, prisoner's counsel asked the court to direct an acquittal, upon the ground that there was no evidence showing that the Grover & Baker Sewing Machine Company was a *corporation*, as alleged in the indictment, which the court refused to do, and to which refusal the prisoner's counsel excepted.

The prisoner was convicted and a writ of error was issued, under which the record was removed into this court for review.

*S. H. Stuart*, for the plaintiff in error.

It is submitted that the verdict must be reversed, because there is no evidence that the " Grover & Baker Sewing Machine Company " is a corporation, as averred in the indictment.

It is a rule of the first importance that the name of the party injured, or to whom stolen property belongs, should be correctly stated, and that the proof support the statement. (1 *Archb. Cr. Pl.*, 16th ed., 176.)

If the goods of a corporation be stolen, the property must be charged to be in the corporation, and not in the individuals who compose it.　It may not, in all cases, be necessary to aver the political existence of the corporation; but even where it is not averred, its existence as such must, nevertheless, be shown by evidence. (*King* v. *Potnell*, 2 *East P. C.*, 1059; 1 *Leach R.*, 123; *Arch. Cr. Pl.*, 10th ed., 214.)

This same doctrine is enunciated in *People* v. *Stearns* (25 *Wend. R.*) One of the objections of the prisoner in that case was, that the Bank of Kentucky was not averred in the indictment to be a corporation, and that, therefore, no evidence could be given showing it to be so. The court held, that although there was no special averment that the bank was incorporated, but being necessary to show that it was a corporation, the charter or act of incorporation could be given in evidence, which was done. The point of the exception was, not that no evidence had been given tending to prove it a corporation, but that, without an express averment, evidence had been given showing it to be incorporated.

In the case at bar, both from legal necessity and by reason of the averment in the indictment, it became incumbent to prove that this " Sewing Machine Company " was a corporation, and the objection is, that it was not done; that no evidence whatever was given tending to prove it to be so. The averment is, that the company was a corporation, existing in and under the laws of the State of Massachusetts, while not one fact was proved, nor one word of testimony given, going in any degree to show that the company had a corporate existence.

The case of *Stearns* (25 *Wend. R.*, 409); of *Peabody* (21 *Wend. R.*, 472); of *Chadwick* (2 *Park. Cr. R.*, 163); of *Wilber* (4 *Park. Cr. R.*, 19); of *De Bow* (1 *Denio R.*, 9); of *Mead* (27 *Vermont*, 277), with authorities cited in those cases, show conclusively that where a corporation is the subject of a direct criminal injury, its existence must be affirmatively shown by evidence. Whether an omission to aver the existence of a corporation relieves (it does not) the prosecution from proving it, need not be now considered, since it is here specially and with much particularity averred that this company is incorporated. Unless, then, the averment of its being a corporation can be rejected as surplusage, or be in some way disregarded, the verdict must be set aside. That this averment cannot be disregarded, is manifest from the following authorities:

The court cannot reject as surplusage that upon which the

jury may have given their verdict. (*Commonwealth* v. *Atwood*, 11 *Mass. R.*, 11.)

No allegation, whether it be necessary or not, which is, in fact or by the pleadings, made material, can be rejected as surplusage. (*United States* v. *Howard*, 3 *Sumn.*, 12.)

Surplusage in an indictment consists of such matter only as is in no way essential to the description or identity of the offense charged, and that does not contradict that which is. (6 *Phil. L. R.*, 93.)

If an indictment allege matters descriptive, however unnecessary to the charge, they become as much the subject of proof as those that are essential to the crime preferred. (*United States* v. *Porter*, 3 *Day*, 283.)

Averments that might with propriety be dispensed with, but being inserted become descriptive of that which is essential, cannot be rejected as surplusage. (*John* v. *The State*, 24 *Miss. R.*, 569; *State* v. *Clark*, 3 *Foster R.*, 429; *State* v. *Hughes*, 1 *Swan R.*, 262; *State* v. *Copp*, 15 *N. H. R.*, 212; *State* v. *Shoemaker*, 7 *Mo. R.*, 177; *Morrison* v. *State*, 24 *Miss. R.*, 36.)

But dismissing (for the argument) the necessity of showing by evidence that this company is a corporation, and regarding it as a non-incorporated company, still this indictment cannot be sustained. Nothing is better settled at common law than that where the owners of stolen property form an unincorporated company or copartnership, the names of all the members comprising the association must be correctly stated, and the property laid to be in them as individual persons. (*Whar. Cr. L.*, 465; *Hogg* v. *State*, 3 *Blackf.*, 326; *Rex* v. *Shovington*, 1 *Leach R.*, 513; *Rex* v. *Bensall*, 1 *Moody C. C.*, 15.)

The only innovation our statute has made upon this rule, is the following section:

"When any offense shall have been committed upon or in relation to any personal property belonging to several partners or owners, the indictment for such offense shall be deemed sufficient if it allege such property to belong to any one or more of such partners or owners, without naming them all." (3 *R. S.*, 5*th ed.*, *p.* 1018.)

Rejecting the averment that this company is a corporation, and we have "the Grover & Baker Sewing Machine Company," without any member, partner, officer or agent, or any president or director named or described as comprising or representing it, in whom the property mentioned might be supposed to vest. It will not be contended that the property can be laid as the goods of the "company" merely, without specifying some one—some private individual or official person of the company, in whom the title to the property may be taken to rest. In a company or copartnership, or the like, this must be done; in a corporation it cannot be done. The proof is as much wanting, in this view of the case, as it is having reference to the existence of a corporation. It is hard to see how, in either aspect, this verdict can possibly be sustained.

*J. H. Anthon*, for defendants in error.

*By the Court,* LEONARD, J. It was necessary to allege in the indictment, and also to prove at the trial, that the corporation alleged to have been injured by the offense of the defendant, was an existing corporation. The evidence wholly fails in this respect. There must be a new trial in the Sessions.

Judgment reversed, and new trial in the Sessions ordered.

---

SUPREME COURT. New York General Term, May, 1862.
*Ingraham, Leonard* and *Barnard*, Justices.